B. J. SAFFORD ET AL., APPELLANTS, v. WILLIAM E. FLYNN ET AL., APPELLEES.

274 N. W. 461

FILED JULY 14, 1937. No. 30044.

*Fradenburg, Webb, Beber, Klutznick & Kelley* and *Robins & Yost,* for appellants.

*Shotwell & Vance* and *Ross L. Shotwell, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and SPEAR, District Judge.

SPEAR, District Judge.

Action by Safford and Clark, depositors' committee of Farmers State Bank of Valley, plaintiffs and appellants, against William E. Flynn and Lillian Maud Flynn, defendants and appellees, to set aside an alleged fraudulent transfer of real estate by husband to wife. The bank is a creditor of Flynn, and Flynn and Lillian Maud Flynn are husband and wife.

Flynn owed the bank on three notes, one for $5,000, one for $2,100, and one for $700. All of these notes were due, repeated demands had been made upon Flynn, and the notes were in the hands of the bank's attorney for suit. On July 23, 1934, the plaintiffs sued Flynn on the $700 note in the county court of Douglas county. On answer day, August 6, 1934, Flynn filed proceedings under the Frazier-Lempke act, and stayed all proceedings until June, 1935. The Frazier-Lempke proceedings were dismissed by the referee, whereupon the plaintiffs took judgment in the county court, transcripted same to the district court, and a writ of execution was issued June 19, 1935. June 21, 1935, the sheriff went to Flynns to levy, but for some reason did not do so. However, both Mr. and Mrs. Flynn knew that the sheriff was there to levy to satisfy the judgment. On June 21, 1935, Flynn made a deed to his wife transferring the farm upon which they resided. The deed recites the consideration as "love and affection and one

dollar." Simultaneously, Flynn mortgaged his personal property to his son, and made an affidavit of exemption which was filed in the district court June 26, 1935. The plaintiffs took judgment against Flynn on the $2,100 note in the district court November 12, 1935, in the sum of $2,821.07. Execution was issued and returned unsatisfied, whereupon plaintiffs brought the action at bar to set aside the transfer, made June 21, 1935, from Flynn to his wife, alleging that the same was fraudulent, and that both Flynn and Mrs. Flynn knew that it was when the transfer was made. Defendants answered, and alleged that the conveyance was made in good faith; that Flynn was indebted to his wife; that the property was the homestead of the defendants; and that the interest of the husband in the property over the encumbrances and the homestead exemption was less than the indebtedness owing by Flynn to Mrs. Flynn.

The trial court found that Flynn was indebted to his wife in the sum of $1,000 since 1906, with accruing interest thereon, but that, by reason of her allowing Flynn to hold title for a long period of time, she was estopped from asserting a lien upon the real estate as against creditors. The court further found that the real estate was the homestead of defendants and was not worth the encumbrances and homestead exemptions, consequently not being subject to fraudulent conveyance. Plaintiffs appeal from these findings, and defendants complain that, there being no estoppel pleaded by plaintiffs, the trial court was powerless to decree that there was in fact an estoppel.

We do not believe that it was necessary for plaintiffs to plead estoppel. Plaintiffs in fact did not rely upon estoppel but relied upon the contention that Flynn did not owe his wife anything. The transfer is presumptively fraudulent and the burden is upon the defendants to prove a good faith transfer for a consideration. The defendant Mrs. Flynn did not, in the judgment of the trial court, show facts entitling her to any standing in a court of equity. The facts relied upon by defendants themselves constituted

an estoppel against Mrs. Flynn. The answers and the evidence in support thereof show that, in addition to the usual trifling contributions that defendants in these cases remember so meticulously, the principal claim of Mrs. Flynn is that, in 1906, she inherited $1,000 from her father, loaned it to her husband and allowed him to use it without let or hinderance until June 21, 1935 (the day the sheriff came). Mrs. Flynn's own testimony upon direct examination shows that, after she gave the $1,000 to Mr. Flynn in 1906, Mr. Flynn and she engaged in a number of real estate transactions, buying and selling farms in Iowa, Nebraska, and one in Colorado. The evidence is confusing, but there appear to be purchases of some nine separate properties. In 1923 Flynn bought 114 acres of land. Mrs. Flynn says that she did not approve of that purchase and asked Flynn to turn the home place (not the 114 acres) over to her, but that her husband "did not think he should for,—well, business reasons, you know, carrying on business in his name and my name; it wasn't just a very nice thing to do; it was better to carry it in his own name." It will be observed that this was 12 years before the transfer. For 17 years she permitted her husband to invest her money in real estate without any talk as to title of the lands, and then for 12 years thereafter she permitted him to retain the title in his own name, for the reasons set forth above, during which time the loans in question here were obtained from the bank, and at least one property statement given by Flynn to the bank making no mention of a debt to his wife. Her own pleadings and her own case are so repugnant to a court of equity that the trial court had no alternative but to find that she was estopped, regardless of whether or not an estoppel was pleaded by plaintiffs. This especially in view of her own testimony as to the agreement when the $1,000 was turned over to Flynn: "Well, it was agreed between us that my money was put in with our money, and whatever the outcome was, why, that is what I would be entitled to; would be my money invested with what was owned between us," and

the fact that in the deed in question here the consideration was "love and affection and one dollar," which deed was drawn by a competent lawyer after the sheriff had been out at the Flynn's to levy.

Coming to the question of the value of the homestead; while we recognize the rule that this court will give great weight to the findings of a trial court'as to value, when the trial judge has inspected the premises, we think that the lower court erred in finding that the value of the real estate over and above liens and encumbrances was less than the homestead exemptions of the defendants. The total encumbrances amounted to $10,910. Adding to this $2,000 (the homestead exemptions) there is a total of $12,910. There appears to be 131½ acres of deeded land and 14½ acres of land leased for $1 a year plus taxes from the Union Pacific Railroad Company, which can only be leased to the abutting owner, so a sale of the property would convey these rights. Each side brought many experts on values, and, as usual, they are in total disagreement. The fact that seems controlling to us is the fact that the plaintiffs have repeatedly offered the defendants much more than $12,910 for the property. Over a month before the trial, plaintiffs offered to pay defendants $4,000 cash; give them the year's crop; cancel all claims against Flynn; and to assume the encumbrance of $10,000 for a deed to the home place. The court received this evidence, but stated that he did not think it competent as against the wife. We think that the court misapprehended the purport of this testimony, and applied the well-known rule of evidence that offers are not competent evidence as to values. A different situation prevails here. This was a definite offer made before the trial, at the trial, and again before the bar of this court. The homestead exemptions of defendants were joint and the offer and refusal definitely fixed the value as to both husband and wife. Therefore, the rule of evidence that the court had in mind does not apply. The question is not one of damages but as to what the land will bring. All of these facts impel us to the conclusion that

the experts on values presented by plaintiffs more nearly stated the correct value than did those of the defendants. Common sense dictates that there is an equity in this land for creditors. If not, why the deed, why all this dogged determination to hold the land? A sale will determine the value beyond all cavil.

The judgment is reversed; the deed from William E. Flynn and wife to Lillian Maud Flynn, recorded in book 633, page 412, of the deed records in the office of the register of deeds of Douglas county, Nebraska, is canceled; plaintiffs' judgment adjudged to be a lien upon said premises, subject only to prior mortgage liens and homestead rights; and the real estate ordered to be sold to satisfy same.

REVERSED.